UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KELI SHAY ZIGGAS,                  Case No. 1:13-cv-87

    Plaintiff,                           Barrett, J.
                                       Bowman, M.J.
    v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**REPORT AND RECOMMENDATION**

Plaintiff Keli Shay Ziggas filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents two claims of error, both of which the Defendant disputes. For the reasons explained below, I conclude that this case should be AFFIRMED because the finding of non-disability is supported by substantial evidence in the administrative record.

**I. Summary of Administrative Record**

In June 2009, Plaintiff filed applications for Disability Insurance Benefits (DIB) alleging a disability onset date of April 8, 2009, due to physical and mental impairments. (Tr. 54, 55, 152-157)[1]. After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ"). On April 27, 2011, ALJ Kristen King held an evidentiary hearing at which Plaintiff appeared with counsel. The ALJ heard testimony from Plaintiff and an impartial vocational expert. (Tr. 44-90). On July 19, 2011, ALJ King denied Plaintiff's application

---
[1] Plaintiff amended her alleged onset date of disability at the administrative hearing. (Tr. 54, 55).

in a written decision. (Tr. 22-37). Plaintiff now seeks judicial review of the denial of her applications for benefits.

Plaintiff was 43 years old at the time of the administrative hearing and had an Associate's Degree in Business. She has past relevant work as a lab technician. Plaintiff alleges disability due to fibromyalgia, Lyme Disease, carpal tunnel syndrome and de Quervain's tenosynovitis in the left wrist, anxiety, diabetes, irritable bowel syndrome, COPD, hypothyroidism, obesity, and lumbar and cervical degenerative disc disease status post-surgery to the lumbar spine.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "lumbar and cervical spine degenerative disc disease, diabetes, mellitus, irritable bowel syndrome, fibromyalgia, headaches, chronic obstructive pulmonary disease (COPD), major depressive disorder." (Tr. 24). The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1. Despite these impairments, the ALJ determined that Plaintiff retains the RFC to perform light work with the following limitations:

> She can never climb ladders, ropes, or scaffolds, never crawl, only occasionally climb ramps or stairs, balance, stoop, kneel, and crouch. In addition, she should perform overhead reaching no more than occasionally, and is limited to bilateral manipulation involving gross manipulation and fine manipulation on a no more than frequent basis. She is limited to routine and repetitive tasks, and work involving only simple work-related decisions. She can interact with the public, but no transactional work such as sales or negotiations. The claimant is limited to low stress work, defined as occasional changes in the work setting. The claimant requires a sit/stand option approximately once every 60 minutes, for a duration of one minute.

2

(Tr. 26). Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, limited education and work experience, and the RFC, the ALJ concluded that Plaintiff could perform jobs that exist in significant numbers in the national economy. (Tr. 36). Accordingly, the ALJ determined that Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to DIB. (Tr. 36-37).

The Appeals Council denied Plaintiff's request for review. Therefore, the ALJ's decision stands as the Defendant's final determination. On appeal to this Court, Plaintiff first argues that the ALJ erred by: 1) improperly weighing the opinion evidence; and 2) improperly assessed Plaintiff's credibility. Upon close analysis, I conclude that Plaintiff's assignments of error are not well-taken.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability" within the definition of the Social Security Act. *See* 42 U.S.C. §1382c(a). Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies. *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can

perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). A claimant seeking benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy. 42 U.S.C. § 423(d)(1)(A).

**B. The ALJ's Decision is Substantially Supported**

*1. Evaluation of the Opinion Evidence*

Plaintiff argues that the ALJ improperly weighed the opinion evidence of record, including those from treating family physician Dr. Owens, and licensed social worker Ms. Ullman.

In evaluating the opinion evidence, "[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'" *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir. 2009) (quoting *Wilson* v. *Commissioner,* 378 F.3d 541, 544 (6th Cir. 2004). If the ALJ does not accord controlling weight to a treating physician, the ALJ must still determine how much weight is appropriate by considering a number of factors, including the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the

opinion, consistency of the opinion with the record as a whole, and any specialization of the treating physician*. Wilson*, 378 F.3d at 544; *see also* 20 C.F.R. § 404.1527(d)(2).

Furthermore, an ALJ must "always give good reasons in [the ALJ's] notice of determination or decision for the weight [the ALJ] give[s] [the claimant's] treating source's opinion." 20 C.F.R. § 404.1527(d)(2); *but see Tilley v. Comm'r of Soc. Sec.*, No. 09–6081, 2010 WL 3521928, at *6 (6th Cir. Aug.31, 2010) (indicating that, under *Blakely* and the good reason rule, an ALJ is not required to explicitly address all of the six factors within 20 C.F.R. § 404.1527(d)(2) for weighing medical opinion evidence within the written decision).

    *a. Dr. Owens*

The record indicates that Plaintiff has treated with Drs. Bradley Patterson and Heather Owens at Regional Family Practice since at least 2004. (Tr. 303-324, 437-630, 684-721, 760-801). Plaintiff was seen primarily for diabetes, asthma, anxiety, orthopedic problems, fibromyalgia and chronic pain.

In March 2010, Dr. Owens opined that, in a "competitive work situation," Plaintiff: (a) could rarely lift/carry less than 10 pounds; (b) could sit/stand/walk for less than two hours per eight-hour workday; (c) could sit for five to 10 minutes before needing to get up; (d) could stand for five minutes before needing to sit down, walk around, etc.; (e) had to walk for five minutes every 10 minutes; (f) required a job that permitted shifting positions at will from sitting, standing, or walking; (g) needed to take unscheduled breaks every 15-30 minutes during an eight hour workday; (h) had significant limitations with reaching, handling, or fingering; and (i) would likely be absent for more than four days per month as a result of her impairments or treatment. (Tr. 722-726). Dr. Owens

stated that Plaintiff's pain was severe enough to interfere frequently with attention and concentration and that Plaintiff was incapable of performing even low-stress jobs. (Tr. 723).

In formulating Plaintiff's RFC, the ALJ determined that Dr. Owen's functional limitations were "not consistent with the overall medical evidence of record, including her own treatment notes, and is given little weight as it appears to be based largely on claimant's subjective report of her symptoms and limitations." (Tr. 34). The ALJ further determined that the opinions of the state agency physicians were generally accepted and given significant weight. Notably, in May 2010, state agency reviewing physician Dr. Hall opined that Plaintiff could: (a) lift/carry 20 pounds occasionally and 10 pounds frequently; (b) stand/walk/sit for about six hours per eight-hour workday; (c) climb ramps and stairs, stoop, and crouch occasionally; and (d) climb ladders, ropes, scaffolds never. (Tr. 753- 754). She also stated that Plaintiff had no manipulative, visual, communicative, or environmental limitations. (Tr. 755-756). Upon careful review, the undersigned finds that the ALJ's determination in this regard is substantially supported.

With respect to Dr. Owens, the ALJ noted that in February 2011, Dr. Owen's reported that Plaintiff had no non-healing sores, her diabetes was stable; and upon examination, she had no focal neurological deficits. (Tr. 766). A CT scan of Plaintiff's chest in February 2011 was normal. (Tr. 905). With respect to Plaintiff's headaches, the ALJ also noted that a 2010 CT scan of Plaintiff's head was normal. The ALJ further noted that Dr. Owen's current treatment records do not reflect any reports from Plaintiff that she is experiencing 4-5 headaches a week or that her headaches caused her to visit the emergency room.

7

The ALJ also addressed Plaintiff's reports of back and neck pain. As noted above, Dr. Owen's opined that Plaintiff was limited by cervical and lumbar spine pain. (Tr. 722). In this regard, the ALJ noted that the records from Mayfield Clinic indicate that Plaintiff's "symptom complex was not classic for cervical radiculopathy and there was no evidence of a definite nerve root compression on MRI. . . ." (Tr. 328). Treatment notes further indicated that Plaintiff had normal motor strength, reflexes, and a stable, well-coordinated gait. The ALJ further noted the October 2010 MRI of Plaintiff's lumbar spine showed degenerative disc disease with mild central canal stenosis and nerve root contact. (Tr. 33, 796). The ALJ also cited to Dr. Owen's treatment notes which show normal musculoskeletal and neurological examination findings. (Tr. 33).

The ALJ also addressed Plaintiff's fibromyalgia diagnosis, noting that Dr. Owen's identified positive trigger points on his RFC questionnaire and prescribed Lyrica. Dr. Owens opined that Plaintiff was limited to sitting, standing and/or walking up to 2 hours each workday, based in part, from pain related fibromyalgia. (Tr. 722). However, as noted by the ALJ, Dr. Owen's current treatment notes do not document any complaints related to fibromyalgia. In light of the foregoing, the undersigned findings that the ALJ offered "good reasons" to support her determination to give little weight to Dr. Owen's extreme limitations, and such findings are supported by the record, as outlined above. (Tr. 34).

In weighing the opinion evidence, Plaintiff further argues the ALJ committed the same error as the administrative law judge in *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365 (6th Cir. 2013) in that "she applied a stricter standard of scrutiny" to the

8

opinion of treating physician Dr. Owens than she did to the opinion of state agency reviewer Dr. Hall. (Doc. 10 at 15). In *Gayheart*, the Sixth Circuit held that an administrative law judge's statement that a treating source's opinion is "not well-supported by any objective findings and are inconsistent with other credible evidence" was "ambiguous" at best and insufficient to be a good reason. *Gayheart,* 710 F.3d at 377. Notably, the ALJ's misstep in *Gayheart,* was that he "does not identify the substantial evidence that is purportedly inconsistent with [the treating physician's] opinions. Surely the conflicting substantial evidence must consist of more than the medical opinions of the nontreating and nonexamining doctors." 710 F.3d at 377. Here, unlike in *Gayheart,* the ALJ did not rely on, solely or otherwise, the record-reviewing physicians' opinions to reject Dr. Owen's findings. Instead, the ALJ based her rejection on reasons permitted by the Regulations and case law, and substantial evidence supported those reasons, as explained above.

Accordingly, the undersigned finds that the ALJ's evaluation of Dr. Owen's RFC assessment is supported by substantial evidence and was made within her "zone of choice."

### b. Susan Ullman, LISW

Plaintiff began treating at Clermont Counseling (now known as "Lifepoint Solutions") in January 2010. From January 2010 into March 2011, Plaintiff attended therapy sessions with Carla Brown and Susan Ullman, LISW, a therapist with Lifepoint Solutions, and also had several psychiatry sessions with Psychiatric Nurse Practitioner Roxanne Huston. (Tr. 727-750, 981-1006). Progress notes from these sessions reveal that although Plaintiff did obtain some minor improvements with therapy and

9

psychotropic medications, she continued to suffer from depression, memory deficits, problems with attention and concentration, and fatigue/poor stamina. Id.

Plaintiff met with Ms. Ullman in March 2011 for a counseling session, wherein they reviewed Plaintiff's symptoms for a social security form.  Thereafter, Ms. Ullman completed a mental residual functional capacities form on April 21, 2011.  (Tr. 1007-1014).  She reported that Plaintiff had obtained some improvement in the sense that some of Plaintiff's symptoms of depression had reduced, but that Plaintiff did not have an improvement in her functioning.  (Tr. 1007).  She reported that Plaintiff experiences drowsiness, lethargy, and stomach upset from her Zoloft and Xanax, and she listed a number of clinical findings which Plaintiff still exhibited, including depression, anxiety, crying spells, impaired concentration and memory, easy distractibility, lethargy, sleep disturbance, appetite disturbance, anhedonia, feelings of hopelessness and worthlessness, low self-esteem, memories of being abused, and guilt.  (Tr. 1007-1008).  Therapist Ullman opined that Plaintiff has "no useful ability to function" in six types of mental abilities and aptitudes needed to do unskilled work, and is "unable to meet competitive standards" in four other types of mental abilities and aptitudes.  (Tr. 1010). She also opined that Plaintiff has "no useful ability to function" in any of the mental abilities and aptitudes needed to do semiskilled and skilled work, and "no useful ability to function" in traveling to unfamiliar places and in using public transportation.  (Tr. 1011-1012).

Ms. Ullman further stated that "[c[lient has extreme difficulty with memory, has difficulty with speech, e.g., told son to put the clothes in the dishwasher. She is easily distracted" and by stating that Plaintiff is "easily upset, does not deal with change well,

10

[is] easily overwhelmed, will cry or withdraw when overwhelmed, [and] sometimes yells." Id. Therapist Ullman rated Plaintiff as having marked functional limitations in activities of daily living, mild difficulties in maintaining social functioning, and extreme limitations in maintaining concentration, persistence or pace. (Tr. 1012). She also opined that Plaintiff can be expected to miss four or more days of work per month due to her impairments or for treatment of her impairments. (Tr. 1013).

However, in formulating Plaintiff's mental RFC, the ALJ determined that Plaintiff had mild limitation in activities of daily living, moderate limitation in social functioning and in concentration, persistence, or pace, and no episodes of decompensation of extended duration. Accordingly, the ALJ limited Plaintiff to routine and repetitive tasks and work involving only simple work related decisions. (Tr. 26). In reaching these findings, the ALJ relied primarily on the opinions of the state agency psychologists, who found Plaintiff's mental impairments to be moderately limiting, and Plaintiff's own description of her daily activities. The ALJ gave little weight to the assessment of Ms. Ullman because it was "found to be based primarily on [Plaintiff's] subjective report of her limitations rather than on the objective evidence." (Tr. 35). In this regard, the ALJ noted that Plaintiff was described as "easily overwhelmed" but the record showed that she was able to perform routine tasks on a regular basis and reported caring for her household as well as her mother's household. (Tr. 35, 993). Upon close inspection, the undersigned finds that the ALJ properly evaluated the findings of Ms. Ullman.

At the outset, the Court notes that a social worker is an "other source" under the regulations. An administrative law judge is not required to afford the same level of deference to opinions of "other sources" as he or she must afford to the opinions of

"acceptable medical sources." See 20 C.F.R. § 404.1513(a) (noting that information from "other sources" cannot establish the existence of an impairment, and that there must be evidence from an "acceptable medical source" for this purpose).  In any event, the ALJ must "consider all relevant evidence in the case record," which necessarily includes evidence from "other sources." Social Security Ruling (SSR) 06-03p, 2006 WL 2329939 (Aug. 9, 2006) (providing that in assessing the weight afforded to opinions from other medical sources," the Commissioner will consider the same factors utilized to assess opinions from acceptable medical sources such as the length, nature, and extent of the relationship, the consistency of the opinion with other evidence, and the degree to which the source presents relevant evidence to support an opinion).

As noted above, the ALJ accorded Ms. Ullman's assessment "little weight" because it was "found to be based primarily on [Plaintiff's] subjective report of her limitations rather than on the objective evidence." (Tr. 35).  In reaching this conclusion the undersigned finds that the ALJ properly considered the findings of Ms. Ullman in accordance with Agency regulation and controlling law.[2]  The ALJ noted that Plaintiff began treating at Clermont Counseling in 2010 and treated at times with a social worker, Ms. Ullman.  The ALJ restated the findings from Ms. Ullman's assessment in April 2011.  Notably, the ALJ cited to the fact that Plaintiff met with Ms. Ullman in order to discuss her symptoms for the completion of the mental assessment questionnaire in

---

[2]  The undersigned recognizes that subjective complaints are an acceptable diagnostic technique in the area of mental impairments.  *Blankenship v. Bowen,* 874 F.2d 1116, 1121, (6th Cir.1989). See also *Warford v. Astrue,* No. 09–52, WL 3190756, at *6 (E.D.Ky. Aug. 11, 2010) (finding interviews are an acceptable diagnostic technique in the area of mental impairments).  In this case however, the record indicates Plaintiff met with Ms. Ullman to specifically review her symptoms to complete her social security form.  In this context, the ALJ reasonably questioned Ms. Ullman's reliance on Plaintiff's subjective complaints.

support of Plaintiff's application for disability benefits. The ALJ also noted that Ms. Ullman found that Plaintiff has extreme difficulty with memory, yet at her initial assessment, Plaintiff did not report or demonstrate any problems with memory. The ALJ further discussed Ms. Ullman's treatment notes which revealed that Plaintiff could acknowledge practical solutions for her issues, but lacked initiative. In addition, the ALJ noted that while Ms. Ullman described Plaintiff as easily overwhelmed, the record indicates that she was able to perform routine tasks on a regular basis, and was able to care for her household and for her mother's household.

In light of such inconsistencies, the undersigned finds that the ALJ reasonably questioned the findings of Ms. Ullman. Accordingly, the ALJ's decision is supported by substantial evidence in this regard.

*2. Evaluation of Plaintiff's Credibility*

Plaintiff's second assignment of error asserts that the ALJ's credibility determination is not supported by substantial evidence. Specifically, Plaintiff asserts that the ALJ's credibility assessment improperly relied on Plaintiff's present daily activities and improperly determined that the record evidence did not support Plaintiff's complaints of disabling pain. Plaintiff's assertions again lack merit.

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). "If an ALJ rejects a claimant's testimony as

incredible, he must clearly state his reasons for doing so." *Felisky v. Bowen*, 35 F.3d 1027, 1036 (6th Cir.1994). The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v. Sec. of HHS*, 753 F.2d 517, 519 (6th Cir.1985). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to

14

relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. *See* 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 240–41 (6th Cir.2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter*, 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d at 392.

As recognized by the Sixth Circuit, in nearly all cases, an evaluation of a claimant's daily activities is relevant to the evaluation of subjective complaints and ultimately, to the determination of disability. *See Warner v. Com'r of Soc. Sec.,* 375 F.3d at 392 ("The administrative law judge justifiably considered Warner's ability to conduct daily life activities in the face of his claim of disabling pain."); *Heston v. Com'r of Soc. Sec.,* 245 F.3d 528, 536 (6th Cir.2001) (ALJ may consider claimant's testimony of limitations in light of other evidence of claimant's ability to perform tasks such as walking, going to church, going on vacation, cooking, vacuuming and making beds).

In this case, in assessing Plaintiff's credibility the ALJ properly relied on the record evidence, including objective medical findings and Plaintiff's own statements

15

about her daily activities. See 20 C.F.R. § 404.1529(c)(2) (objective medical findings are useful in assessing the intensity and persistence of a claimant's symptoms) and 20 C.F.R. § 404.1529(c)(3)(i)(daily activities may be useful to assess nature and severity of claimant's symptoms). Notably, the ALJ's decision points to normal examination findings during the relevant time frame. In this regard, the ALJ noted that 2009 exam notes illustrated normal gait and station, normal range of motion, normal muscle tone and strength, and normal sensation and reflexes. (Tr. 29). The ALJ also referenced 2010 exam notes showing normal musculoskeletal and neurological results. (Tr. 30). She further referenced 2010 ER notes that showed Plaintiff had no trouble walking, normal muscles strength and tone, and normal reflexes. (Tr. 31).

The ALJ also noted that Plaintiff had only mild limitation in conducting activities of daily living. (Tr. 25). For example, the ALJ noted Plaintiff's self-reported daily activities, which included: attending to her self-care; having a valid driver's license and driving occasionally; grocery shopping once or twice a month; helping with chores like laundry, loading the dishwasher; getting together with friends occasionally; using a computer for social networking; and managing her mother's household as well as her own during the relevant period. (Tr. 25, 27, 29, 34).

Based on the foregoing the undersigned finds that the ALJ's credibility assessment is within the "zone of choice" and should therefore be affirmed. See *Felisky*, 35 F.3d at 1035.

16

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

                                            *s/Stephanie K. Bowman*
                                            Stephanie K. Bowman
                                            United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KELI SHAY ZIGGAS,                   Case No. 1:13-cv-87

    Plaintiff,                          Barrett, J.
                                          Bowman, M.J.
    v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

    Defendant.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).