**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION**

| | |
|---|---|
| Keli Shay Ziggas, | ) |
| | ) |
| Plaintiff, | ) Case No. 1:13-CV-87 |
| | ) |
| vs. | ) |
| | ) |
| Carolyn W. Colvin, | ) |
| Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

O R D E R

This matter is before the Court on Magistrate Judge Bowman's Report and Recommendation of March 12, 2014 (Doc. No. 16) and Plaintiff Keli Shay Ziggas's objections to the Report and Recommendation. Doc. No. 27.  In her Report and Recommendation, Judge Bowman concluded that the Administrative Law Judge's ("ALJ") determination that Plaintiff is not disabled under the Social Security regulations because she has the residual functional capacity ("RFC") to perform a limited range of jobs at the light level of exertion was supported by substantial evidence.  Judge Bowman, therefore, recommended that the ALJ's decision be affirmed and this case be closed on the docket of the Court.  As is particularly relevant here, Plaintiff contends that the ALJ erred by rejecting disabling physical and mental health RFC opinions submitted by, respectively, her treating physician and her treating mental health therapist, who is a licensed social worker.  In her report, however, Judge Bowman concluded that the ALJ's decision not to give controlling or even significant weight to these disabling opinions was supported by substantial evidence.  Finding no error in Judge Bowman's analysis of the ALJ's decision, Plaintiff's objections to the Report and

Recommendation are not well-taken and are **OVERRULED**.  The Court **ADOPTS** the Report and Recommendation.  The decision of the ALJ is **AFFIRMED**.

### I. Background

Plaintiff Keli Shay Ziggas filed a claim for disability insurance benefits based on both physical and mental impairments.  The Social Security Administration denied her claim initially and upon reconsideration.  Plaintiff requested and received an evidentiary hearing before an ALJ, which took place in April 2011.  In July 2011, the ALJ issued a written decision finding that Plaintiff is not disabled under the Social Security regulations.

Proceeding through the five-step sequence for analyzing disability claims, the ALJ determined that Plaintiff has not engaged in any substantial gainful activity since June 2007.  The ALJ next found that Plaintiff has severe impairments of lumbar and cervical spine degenerative disc disease, diabetes mellitus, irritable bowel syndrome, fibromyalgia, headaches, chronic obstructive pulmonary disease (COPD), major depressive disorder, and generalized anxiety disorder, but that none of these impairments, individually or in combination, meets a listed impairment which would direct a finding of disability.

The ALJ then determined that Plaintiff has the physical RFC to perform light work with some additional limitations, specifically, that she can never climb ropes, ladders or scaffolds, she can never crawl, she can occasionally climb ramps or stairs, balance, stoop, kneel or crouch, she can reach overhead occasionally, and she can perform bilateral manipulation involving gross manipulation and fine manipulation on a frequent

basis.  The ALJ determined that Plaintiff has the mental RFC to perform jobs with routine and repetitive tasks that involve only simple work-related decisions, she can interact with the public but cannot perform transactional work such as sales or negotiations, and she can perform only low stress work involving only occasional changes in the work setting.  Finally, the ALJ found that Plaintiff needs a job with a sit/stand option once every 60 minutes for approximately one minute.

The ALJ then concluded that this RFC would not permit Plaintiff to perform her past relevant work as a lab technician. Based on the testimony of the vocational expert, however, the ALJ found that this RFC would allow Plaintiff to perform several jobs that exist in significant numbers in the national economy, such as bench assembler, hand packer, and inspector.  Based on her determination that Plaintiff has the RFC to perform these jobs, the ALJ concluded that Plaintiff is not disabled under the Social Security regulations.

In developing Plaintiff's physical and mental RFC, the ALJ gave little weight to an RFC opinion submitted by Plaintiff's treating physician, Dr. Heather Owens, and little weight to the RFC opinion submitted by Plaintiff's mental health therapist, Susan Ullman, a licensed social worker.

Dr. Owens completed a Physical Residual Functional Capacity Questionnaire in March 2010 which was, in the words of the ALJ, "very limiting." Tr. 33.  According to Dr. Owens's report, Plaintiff has lumbar degenerative disc disease, hypothyroidism, endometriosis, Type II diabetes, a cervical herniated disc, fibromyalgia, and asthma. Tr. 722.  These conditions cause pain, fatigue and shortness of breath.  Dr. Owens indicated further that Plaintiff's cervical and lumbar pain is exacerbated by pushing,

pulling, standing, bending, standing, walking and prolonged sitting.  Id.  Dr. Owens opined that Plaintiff cannot tolerate even low stress jobs and that she can sit for only 5 to 10 minutes at a time, stand for only 5 minutes at a time, and that she can only sit and stand or walk for a total of 2 hours in an 8 hour day.  Tr. 723-724.  Dr. Owens indicated that Plaintiff needs to walk for 5 minutes every 10 minutes, that she would need a job where she can shift positions at will, and that she would need unscheduled 10 to 15 minute breaks every 15 to 30 minutes.  Tr. 724-25.  Dr. Owens indicated essentially that Plaintiff can never lift and carry any amount of weight, that she can never look up or rarely turn her head left or right, and that she can never hold her head in a static position.  Additionally, Dr. Owens stated that Plaintiff can never twist, stoop, crouch, or climb ladders and stairs, that she can never do grasping, reaching and fine manipulation, and that she would miss more than four days of work per month.  Tr. 725-726.  The vocational expert testified that Dr. Owens's RFC would preclude Plaintiff from performing any work.  Tr. 82-83.

      The ALJ, however, gave little weight to Dr. Owens's opinion on the grounds that "it is not found to be consistent with the overall medical evidence of record, including her own treatment notes" and because "it appears to be based largely on the claimant's subjective report of her symptoms and limitations." Tr. 34.  Instead, the ALJ gave significant weight to the opinions of the state agency physicians in determining that Plaintiff has the physical RFC to perform a limited range of light work.  Id.

      Plaintiff's mental health therapist, Susan Ullman, a licensed social worker who was treating Plaintiff for depression, gave an extremely limiting mental RFC opinion.  Ms. Ullman indicated that Plaintiff is seriously limited in her abilities to remember work-

4

like procedures, understand, remember and carry out very short and simple instructions, and respond appropriately to changes in a routine work setting. Tr. 1010. Ms. Ullman stated that Plaintiff is limited but can satisfactorily ask simple questions or ask for assistance and interact appropriately with co-workers. Id. Otherwise, according to Ms. Ullman, Plaintiff cannot meet competitive standards or has no useful ability to function in the ten remaining categories, including maintaining attention for two hours at time, maintaining a regular work schedule, working at a consistent pace, and dealing with normal work stress. Id. The ALJ, however, gave Ms. Ullman's opinion little weight on the grounds that it was based on Plaintiff's subjective reports of her limitations rather than on objective evidence. Tr. 35. The ALJ's decision also indicates that Ms. Ullman's opinion is contrary to other medical evidence in the record. For instance, the ALJ noted that Ms. Ullman's opinion that Plaintiff cannot be exposed to a large number of people is inconsistent with the opinion of Dr. Chiappone, a state agency examining psychologist, who concluded that she would have little difficulty relating to others in a work setting, including the general public. Tr. 35.

Instead, in arriving at Plaintiff's mental RFC, the ALJ "generally accepted" the opinions of the state agency psychologists except that she concluded that Plaintiff is moderately limited in social functioning and moderately limited in concentration, persistence and pace, and she could have only limited contact with the public for transactional work. Tr. 35. In contrast, for instance, Dr. Chiappone indicated that Plaintiff is only mildly impaired in her ability to interact with co-workers, supervisors, and the general public. Tr. 635.

As stated above, the ALJ determined that Plaintiff is not disabled under the Social Security regulations because the RFC she adopted indicates that Plaintiff can perform several jobs that exist in significant numbers in the national economy.  After the Commissioner denied Plaintiff's request for review of the ALJ's decision, Plaintiff filed a timely complaint for judicial review of that decision.

In two assignments of error, Plaintiff contends that the ALJ failed to give good reasons for giving less than significant weight to the opinions of Dr. Owens and Ms. Ullman.  Plaintiff argues further that the ALJ violated the Sixth Circuit's opinion in Gayheart v. Commissioner of Social Sec., 710 F.3d 365 (6th Cir. 2013), by applying more stringent standards in evaluating the opinions of treating physicians than she did in evaluating the opinions of reviewing and examining physicians.  Relatedly, Plaintiff argues that the ALJ erred by failing to state how much weight she gave to Dr. Chiappone's opinion.  Dr. Chiappone's opinion is disabling, she claims, because he found Plaintiff moderately limited in her ability to carry out simple work instructions.  Moreover, Plaintiff argues, Dr. Chiappone's opinion actually supports Ms. Ullman's essentially disabling opinion.  Finally, Plaintiff argues that the ALJ erred in evaluating her credibility because her activities of daily living are not indicative of an ability to perform work on a full-time competitive basis.

Magistrate Judge Bowman's report found that both the weight the ALJ gave to the medical opinions and the ALJ's credibility determinations were supported by substantial evidence.  Supporting the weight, or lack thereof, the ALJ gave to Dr. Owens's opinion, Judge Bowman noted the contrary opinions of the state agency physicians, reports that Plaintiff's diabetes is stable, normal chest and head CT scans,

6

MRI's showing no nerve root compression or cervical radiculopathy, normal neurological and musculoskeletal examinations, and an absence of complaints from Plaintiff in treatment notes concerning fibromyalgia. Judge Bowman also determined that the ALJ did not violate Gayheart because she based her decision to give little weight to Dr. Owens's opinion on more than the contrary opinions of the state agency physicians.

Judge Bowman next determined that Ms. Ullman is not a treating source under the Social Security regulations and that, therefore, the ALJ did not have to give her opinion any deference, although she did have to consider it. Judge Bowman found that the ALJ's decision to give little weight to Ms. Ullman's opinion was supported by substantial evidence, pointing out for instance, inconsistencies between the finding that Plaintiff has an extremely impaired memory and the absence of complaints or findings of an impaired memory in Plaintiff's initial assessment. Finally, Judge Bowman found that the ALJ's credibility determination was supported by substantial evidence. In rejecting Plaintiff's complaints of disabling pain, Judge Bowman pointed out the ALJ's reliance on Plaintiff's normal physical examinations on at least several occasions and her findings that Plaintiff's activities are only mildly impaired. Accordingly, Judge Bowman recommended affirming the ALJ's decision.

Plaintiff filed timely objections to Judge Bowman's report which are ready for disposition.

## II. Standard of Review

The relevant statute provides the standard of review to be applied by this Court in reviewing decisions by the ALJ. See 42 U.S.C. § 405(g). The Court is to determine only whether the record as a whole contains substantial evidence to support

the ALJ's decision. "Substantial evidence means more than a mere scintilla of evidence, such evidence as a reasonable mind might accept as adequate to support a conclusion." LeMaster v. Secretary of Health & Human Serv., 802 F.2d 839, 840 (6th Cir. 1986) (internal citation omitted). The evidence must do more than create a suspicion of the existence of the fact to be established. Id. Rather, the evidence must be enough to withstand, if it were a trial to a jury, a motion for a directed verdict when the conclusion sought to be drawn from it is one of fact for the jury. Id. If the ALJ's decision is supported by substantial evidence, the Court must affirm that decision even if it would have arrived at a different conclusion based on the same evidence. Elkins v. Secretary of Health & Human Serv., 658 F.2d 437, 439 (6th Cir. 1981). The district court reviews de novo a magistrate judge's report and recommendation regarding social security benefits claims. Ivy v. Secretary of Health & Human Serv., 976 F.2d 288, 289-90 (6th Cir. 1992).

### III. Analysis

#### A. Treating Physician Rule

Plaintiff's argument that the ALJ erred in the weight she gave to Dr. Owens's opinion implicates the treating physician rule.

Under the "treating physician rule," the opinion of a claimant's treating physician is accorded controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record[.]" Rogers v. Commissioner of Social Sec., 486 F.3d 234, 242 (6th Cir. 2007). If the treating physician's opinion is not controlling, the ALJ, in determining how much weight is appropriate, must consider a host of factors, including the length,

frequency, nature, and extent of the treatment relationship; the supportability and consistency of the physician's conclusions; the specialization of the physician; and any other relevant factors. Id. There is a rebuttable presumption that the opinion of a treating physician is entitled to great deference, its non-controlling status notwithstanding. Id. (citing Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 ("In many cases, a treating physician's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.")). Additionally, the ALJ must provide "good reasons" for discounting a treating physician's opinion, reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight. Id.

Gayheart, cited by Plaintiff, held that the ALJ cannot base her decision to reject the opinion of a treating physician solely on the opinions of non-treating or non-examining doctors, otherwise "the treating source's opinion would have controlling weight only when the other sources agreed with that opinion." 710 F.3d at 377. Gayheart also cautioned that the ALJ cannot scrutinize the opinions of treating sources more rigorously than the opinions of consultative physicians - no double standards allowed. Id. at 379-80.

With the above standards in mind, the Court concurs with Judge Bowman's assessment that the ALJ's decision to give little weight to Dr. Owens's extreme disabling opinion was supported by substantial evidence.

First, as the ALJ noted, Dr. Owens's opinion was inconsistent with much of the medical evidence, including her own treatment notes as well as the treatment notes of

9

other doctors in her practice group. An ALJ is entitled to reject the opinion of a treating physician when it is inconsistent with his or her treatment notes. E.g., Gant v. Commissioner of Social Sec., 372 Fed. Appx. 582, 584 (6th Cir. 2010). For instance, despite indicating that Plaintiff is extremely limited in her ability to sit, stand and walk, except on a few occasions (e.g., Tr. 769), Dr. Owens's treatment notes, and those of her practice partner, Dr. Patterson, consistently document that Plaintiff has a full range of motion in her back, normal deep tendon reflexes, and normal gait, stance and balance. Tr. 481, 475, 469, 468, 460, 453, 450, 449, 699, 693, 689, 779, 777, 775, 773, 771. Indeed, only about two weeks after issuing her disabling RFC opinion, Dr. Owens's treatment notes again indicated essentially normal findings on physical examination. Tr. 777, 779. Additionally, as the ALJ observed, Dr. Owens's sitting limitations are inconsistent with Plaintiff's evident ability to sit through 60 to 75 minute counseling sessions without any documented discomfort.

Second, the ALJ's determination that Dr. Owens's opinion was inconsistent with the overall medical record was supported by substantial evidence. The ALJ noted normal physical examination findings on numerous occasions, consistent observations that Plaintiff appeared in no acute distress and had normal strength, muscle tone, and gait, absence of current complaints concerning fibromyalgia symptoms, and an MRI showing only mild to moderate degenerative disc disease and degenerative facet changes. Tr. 796-797.

Third, the ALJ did not run afoul of Gayheart in rejecting Dr. Owens's opinion because she relied on more than just the opinions of the state agency physicians to support that decision. As just summarized, the ALJ reasonably observed that Dr.

Owens's opinion was not supported by much of the medical record, including her own treatment notes. There was, therefore, a substantial basis for the ALJ's decision not to give controlling weight to Dr. Owens's opinion.

Next, and relatedly, Plaintiff is incorrect that the ALJ erred by not stating how much weight she gave to the opinion of Dr. Chiappone, the state agency psychologist. Plaintiff is further incorrect that Dr. Chiappone's opinion that Plaintiff is moderately impaired in the ability to carry out simple instructions precludes her ability to work. As to the first argument, the ALJ specifically stated that "the opinions of the state agency reviewing psychologists are generally accepted," Tr. 35, a statement which indicates that the ALJ gave Dr. Chiappone's opinion significant weight. Moreover, is not clear that Dr. Chiappone actually stated that Plaintiff is moderately impaired in her ability to carry out simple instructions. Dr. Chiappone stated that Plaintiff is not impaired in her ability to remember simple instructions, that she is moderately impaired in remembering simple instructions, and moderately impaired "in her ability to carry out and persist over time due to depression and anxiety." Tr. 635.

Plaintiff notably does not provide any authority to support her contention that a moderate limitation in carrying out simple instructions precludes the claimant's ability to work. In any event, courts generally agree that although the Social Security regulations do not define a "moderate limitation" it is commonly defined on agency forms "as meaning that the individual is still able to function satisfactorily." Lacroix v. Barnhart, 465 F.3d 881, 888 (8th Cir. 2006). Additionally, the record is clear that during the evidentiary hearing the vocational expert did not agree that a moderate limitation in carrying out simple instructions would preclude the Plaintiff's ability to maintain

11

competitive employment. Rather, the vocational expert agreed with Plaintiff's counsel that if a moderate limitation means that the claimant is unable to carry out simple instructions 30% of the time, then competitive employment would be precluded. But, the vocational expert did not agree that Plaintiff's definition is the one that applies to "moderate limitation." Tr. 87-88.

Finally, the state agency reviewing psychologist, whose opinions the ALJ also "generally accepted," indicated that Plaintiff is not significantly limited in her ability to carry out simple instructions. Tr. 653. Therefore, the ALJ's determination that Plaintiff's mental impairments do not limit her ability to carry out simply instructions is supported by substantial evidence in the record. In other words, even though the ALJ "generally accepted" Dr. Chiappone's opinion, his opinion does not necessarily trump the opinion of the other state agency psychologist and mandate a finding that Plaintiff's ability to carry out simple instructions is impaired.

Continuing further, the ALJ did not err in the weight she gave to the opinions of Ms. Ullman, the social worker. Social workers are not acceptable medical sources under the applicable regulations and their opinions are not entitled to be given any weight or deference by the ALJ. Hill v. Commissioner of Soc. Sec., __Fed. Appx.__, No. 13-6101, 2014 WL 1257948, at *2 (6th Cir. Mar. 27, 2014). As indicated above, Ms. Ullman issued an evaluation indicating that Plaintiff cannot meet competitive standards or has no useful ability to function in ten areas of mental functioning. Ms. Ullman's opinion at a minimum, however, is contradicted by the opinions of the state agency psychologists. Therefore, the ALJ did not err in the weight she assigned to Ms.

Ullman's opinion. Sanders v. Commissioner of Soc. Sec., 66 Fed. Appx. 551, 553-54 (6th Cir. 2003).

Finally, the ALJ did not err in assessing Plaintiff's credibility. Plaintiff complains that the activities of daily living she can perform do not support the ALJ's determination that she can work on a sustained basis. Assessing the claimant's credibility, however, involves more than just evaluating the claimant's activities of daily living; it requires consideration of the whole medical record, including "medical signs and lab findings, the claimant's own complaints of symptoms, any information provided by the treating physicians and others, as well as any other relevant evidence contained in the record." Rogers v. Commissioner of Social Sec., 486 F.3d 234, 247 (6th Cir. 2007). Moreover, the ALJ's credibility findings are entitled to substantial deference by the reviewing court. Barker v. Shalala, 40 F.3d 789, 795 (6th Cir.1994).

Here, the ALJ cited more than just Plaintiff's activities of daily living in discounting her subjective complaints about the severity of her symptoms. In particular, the ALJ observed that Plaintiff's Lyme titres are normal, her CT scans were normal and there were no current complaints of migraines, Plaintiff's diabetes was reported as stable and there was no evidence of neuropathy or end organ damage, Plaintiff had no nerve root compression, and normal motor strength and reflexes and a well-coordinated gate. Tr. 32-33. The ALJ also noted the absence of current complaints about fibromyalgia and the fact that treating doctors consistently noted that Plaintiff did not appear to be in acute distress despite complaining of high levels of pain. Tr. 33-34. The ALJ also observed that Plaintiff appeared to be able to tolerate sitting through hour-long counseling sessions without discomfort or losing her concentration. Tr. 34. Finally, the

13

ALJ cited findings that Plaintiff is able to interact appropriately with others and improvement in her mental status after starting Trazadone and Zoloft. Tr. 34. These findings all support the ALJ's decision to discount Plaintiff's credibility.

Conclusion

In conclusion, Plaintiff's objections to Magistrate Judge Bowman's Report and Recommendation are **OVERRULED** for the reasons stated. The Court **ADOPTS** the Report and Recommendation. The decision of the ALJ finding that Plaintiff is not disabled under the Social Security regulations is **AFFIRMED. THIS CASE IS CLOSED.**

    **IT IS SO ORDERED**

Date May 6, 2014                          s/Sandra S. Beckwith
                                                  Sandra S. Beckwith
                               Senior United States District Judge